IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HASSAN ADI, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 20-cv-01378 |
| ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, et al., | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hassan Adi, a noncitizen, brought suit under 8 U.S.C. § 1421(c) against the Department of Homeland Security (DHS), the U.S. Citizenship and Immigration Services (USCIS), and various officials of those agencies (collectively, "the Government") seeking judicial review of the denial of his naturalization application.[1] The Government claims the Immigration and Naturalization Act's priority provision in 8 U.S.C. § 1429 precludes judicial review at this juncture and moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Although the Court disagrees with some of the Government's reasoning, it concurs that this Court lacks subject-matter jurisdiction to review USCIS's July 23, 2019 "final determination" of Mr. Adi's naturalization application. Accordingly, the Government's motion pursuant to Rule 12(b)(1) is granted.

---

[1] As originally filed, the lead defendant was Chad Wolf, who was at that time the Acting Secretary of DHS. Alejandro Mayorkas is the current incumbent Secretary and has therefore been substituted for Mr. Wolf pursuant to Federal Rule of Civil Procedure 25(d). Substitutions of other officers may also be appropriate, but the Court has not been advised of further misnomers among the originally named defendants.

## I. LEGAL FRAMEWORK

DHS is vested with the authority to execute the two core functions of immigration law: removal and naturalization. 8 U.S.C. § 1103. When removal is deemed necessary, DHS—acting through U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or USCIS—initiates removal proceedings before an immigration court organized within the Department of Justice's Executive Office for Immigration Review. 8 C.F.R. §§ 100, 239, 1003. A noncitizen may appeal an adverse removal decision by an immigration judge to the Board of Immigration Appeals and then directly to the United States Circuit Court of Appeals. 8 U.S.C. § 1252(b); 8 C.F.R. § 1240.15.[2]

Naturalization, on the other hand, begins when a noncitizen files an application for naturalization with USCIS. 8 C.F.R. §§ 310, 334. A USCIS examining officer then conducts an investigation and an in-person examination of the applicant before issuing a decision. 8 C.F.R. § 335. If the examining officer does not issue a decision within 120 days of conducting the in-person examination, the applicant may apply to the United States District Court, which may then decide the matter outright or remand the application back to USCIS with instructions. 8 U.S.C. § 1447(b). If, however, the examining officer denies the application within the allotted 120 days, the applicant may request a hearing before a USCIS reviewing officer who reviews the application *de novo* and issues a "final determination." 8 U.S.C. § 1447(a); 8 C.F.R. § 336. Finally, the applicant may appeal an adverse final naturalization determination to the United States District Court. 8 U.S.C. § 1421(c).

Historically, the removal process and the naturalization process could advance simultaneously. *Shomberg v. United States*, 348 U.S. 540, 543 (1955). A determination in one,

---

[2] This Court uses the term *noncitizen* except where use of *alien* maintains consistency with quoted text.

however, would *ipso facto* terminate the other because each result precludes the other. *Id.*; *see also Zayed v. United States*, 368 F.3d 902, 905 n.4 (6th Cir. 2004) ("A person who has been naturalized cannot be removed, and a person who has been removed cannot be naturalized."). This often gave rise to "a race between the alien to gain citizenship and the Attorney General to deport him." *Shomberg*, 348 U.S. at 544. To put an end to this race, Congress in 1952 enacted 8 U.S.C. § 1429, which dictates that removal proceedings take precedence over naturalization applications. *Id*. For this reason, courts refer to section 1429 as the "priority provision." *See, e.g.*, *Barnes v. Holder*, 625 F.3d 801, 806 (4th Cir. 2010); *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1045 (9th Cir. 2004). Section 1429's priority provision reads: "[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act." 8 U.S.C. § 1429.[3]

## II. FACTUAL BACKGROUND

Mr. Adi is a native and citizen of Palestine who entered the United States in 2003. He obtained lawful permanent resident status five years later through marriage to a United States citizen. Then in 2014, he applied for naturalization with USCIS.

In June 2015, an examining officer from the USCIS field office in Chicago conducted an in-person interview with Mr. Adi. The officer did not issue a decision on Mr. Adi's application within the allotted 120 days, however, and so, in July 2016, Mr. Adi filed suit under 8 U.S.C. § 1447(b) in this district. On a motion to remand, USCIS represented it was prepared to issue a decision on Mr. Adi's application within two weeks, and a remand followed in June 2017. *Adi v.*

---

[3] The reference to the Attorney General in section 1429 is an anachronism resulting from the creation of DHS and the attendant reorganization and restructuring of Executive Branch responsibilities for immigration. It is now understood to refer to the Secretary of DHS. *See Klene v. Napolitano*, 697 F.3d 666, 667 (7th Cir. 2012).

*Rodriguez*, No. 16-cv-06970 (N.D. Ill. remanded June 9, 2017). As promised, USCIS issued a decision on Mr. Adi's application on June 19, 2017—a denial.

USCIS denied Mr. Adi's application for naturalization based on a finding that Mr. Adi materially misrepresented his marital status; namely, that he omitted the fact that he was concurrently married to a woman living in Palestine at the time of his marriage to his United States wife. Two months later, on August 7, 2017, Mr. Adi applied under 8 U.S.C. § 1447(a) for a hearing to review the denial.[4]

Around this same time, USCIS issued Mr. Adi a notice to appear for removal proceedings in immigration court. Notably, the notice to appear did not include the date and time Mr. Adi was to appear. Instead, the notice stated that the date and time of the hearing were "to be set."

Despite having issued a putative notice to appear as means to commence removal proceedings against Mr. Adi, USCIS continued to process Mr. Adi's section 1447(a) naturalization appeal in seeming contravention of the priority provision. In March 2019, nineteen months after the notice to appear for removal proceedings issued, a USCIS reviewing officer held a review hearing on the denial of Mr. Adi's naturalization application. About four months later, on July 23, 2019, that officer issued a "final determination" upholding the denial of Mr. Adi's naturalization application. (It is as to this ruling that Mr. Adi seeks review in this Court.)

---

[4] 8 C.F.R. § 336.2(a) requires applicants to request review hearings within thirty days after receipt of a denial. Mr. Adi requested a review hearing forty-nine days after issuance of his denial. The Government notes Mr. Adi's untimeliness but does not argue that it is relevant. *See* Mot. to Dismiss at 2 n.1, 5, ECF No. 18. Section 336.2(c)(2)(ii) permits USCIS to treat an untimely review hearing request as a motion to reopen or a motion to reconsider. Absent argument to the contrary, this Court presumes USCIS treated Mr. Adi's review request in that manner. Also noteworthy is section 336.2(b), which requires USCIS to schedule review hearings within 180 days of an applicant's timely request. Here, USCIS held Mr. Adi's review hearing 595 days after Mr. Adi requested it.

But then, on September 12, 2019, after a review of Mr. Adi's record and on its own motion, USCIS withdrew the July 2019 final determination and administratively closed Mr. Adi's naturalization case. USCIS predicated this withdrawal on the ground that Mr. Adi's pending removal proceedings precluded the agency from considering his naturalization application. In other words, in the eyes of USCIS, the notice to appear, issued two years earlier, had commenced removal proceedings; and so, under section 1429's priority provision, the USCIS reviewing officer who issued Mr. Adi's final determination lacked jurisdiction to do so. Accordingly, USCIS withdrew its final determination of Mr. Adi's naturalization application.

On February 25, 2020, Mr. Adi filed this suit under 8 U.S.C. § 1421(c) seeking judicial review of the July 2019 denial of his naturalization application along with other various claims for relief. The Government has moved to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Because jurisdictional issues are dispositive, only the 12(b)(1) component of the Government's motion will be addressed.

### III. LACK OF SUBJECT-MATTER JURISDICTION

When reviewing a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must "accept[] as true all well-pleaded factual allegations and draw[] reasonable inferences in favor of the plaintiff[]." *Bultasa Buddhist Temple of Chi. v. Nielsen, 878 F.3d 570, 573* (7th Cir. 2017). Further, a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (internal quotation removed).

A. **8 U.S.C. § 1421(c) Jurisdiction – Effect of 8 U.S.C. § 1429**

Mr. Adi asserts that this Court has subject-matter jurisdiction in this case pursuant to 8 U.S.C. § 1421(c). That provision reads: "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court . . . ." Section 1429's priority provision prevents immigration officers from considering naturalization applications during the pendency of a removal proceeding, but courts have reached different conclusions as to how this rule effects judicial review under section 1421(c). Some have found that section 1429 denies courts subject-matter jurisdiction. *See Barnes v. Holder*, 625 F.3d 801, 807 (4th Cir. 2010); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 341 (5th Cir. 2007). Others have found that section 1429 prevents courts from providing a remedy even though subject-matter jurisdiction is unaffected. *See Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *Zayed v. United States*, 368 F.3d 902, 907 (6th Cir. 2004); *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1047 (9th Cir. 2004). The Seventh Circuit in *Klene v. Napolitano* rejected both of these conclusions. 697 F.3d 666, 669 (7th Cir. 2012).

In *Klene*, the Seventh Circuit held that section 1421(c) confers jurisdiction on federal district courts to review naturalization applications that have been denied notwithstanding the applicability of section 1429. Section 1421(c), it held, "authorize[s] district courts to decide whether aliens are entitled to naturalization. No more is necessary . . . ." *Id*. at 668. Section 1429 does not withdraw that grant of jurisdiction to federal district courts; it simply limits "[w]hat the Attorney General may do—and derivatively what a court may order the Attorney General to do . . . ." *Id*. Because "the Attorney General cannot naturalize an alien after removal proceedings have begun, the court cannot direct the Attorney General to naturalize the alien." *Id*. "But to say

6

that the court cannot order the Attorney General to naturalize an alien is **not** to say that the court cannot act." *Id*. at 669. For instance, "a declaratory judgment of entitlement to citizenship would not violate § 1429, because it would not order the Attorney General to naturalize the alien . . . ." *Id*. And, of course, a declaratory judgement in an alien's favor is not a nugatory win. "The alien could plead the declaratory judgment in the removal proceedings, because the United States as a whole is bound by principles of mutual issue and claim preclusion." *Id*. That "would bring the removal proceeding to a prompt close, allowing the Attorney General to naturalize the alien." *Id*. "This approach preserves the alien's entitlement under § 1421(c) to an independent judicial decision while respecting the limit that § 1429 places on the Attorney General's powers." *Id.*; *see also Gonzalez v. Secretary of Homeland Security*, 678 F.3d 254, 260 (3d Cir. 2012) (adopting same approach).

It should be noted that this approach (issuing a declaratory judgment on the entitlement to naturalization) is also discretionary. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . [a court] **may** declare the rights and other legal relations of any interested party . . . ." (emphasis added)); *Klene*, 697 F.3d at 669. A court may decide to abstain and wait for the removal proceeding to run its course—ultimately concluding, in some cases, with judicial review in the circuit court. *See* 8 U.S.C. § 1252(b). Either way, a noncitizen will get their day in court. The rub, however, is that this day looks quite different depending on whether it comes at the end of a naturalization proceeding or at the end of a removal proceeding. Under section 1421(c), judicial review is *de novo*, resulting in independent findings of fact from the district court; under section 1252(b), the circuit court asks only whether substantial evidence supports the agency's conclusion. *Compare* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to

7

conclude to the contrary."), *and* 8 U.S.C. § 1252(b)(4)(D) ("[T]he Attorney General's discretionary judgment whether to grant relief . . . shall be conclusive unless manifestly contrary to the law and an abuse of discretion."), *with* 8 U.S.C. § 1421(c) ("[R]eview shall be de novo, and the court shall make its own findings of fact and conclusions of law . . . ."); *compare* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."), *with* 8 U.S.C. § 1421(c) (The district court "shall, at the request of the petitioner, conduct a hearing de novo on the application.").

### B. 8 U.S.C. § 1421(c) Jurisdiction – Statutory Preconditions

None of the foregoing matters, however, unless the naturalization application "is denied" before the commencement of the removal proceedings. *See Klene*, 697 F.3d at 669. Section 1421(c) does not take effect until an application "is denied[] after a hearing before an immigration officer under section 1447(a) . . . ." 8 U.S.C. § 1421(c); *see* 8 C.F.R. § 310.5(b) ("After an application for naturalization is denied following a hearing before a Service officer pursuant to [section 1447(a)], the applicant may seek judicial review of the decision pursuant to [section 1421]."). And at its most basic, the Government's argument in this case is that Mr. Adi cannot seek judicial review under section 1421(c) because his naturalization application is not "denied": USCIS withdrew its final determination denying the application in September 2019. Mr. Adi counters that this putative "withdrawal" is not dispositive because exhausting his section 1447(a) remedies would be futile. He maintains that because USCIS did in fact issue a final determination but later withdrew it under the pretense that it had been issued in violation of section 1429, USCIS has predetermined that his application will be denied. Thus, his

section 1447(a) remedies are "prudentially exhausted," which makes his denied application "ripe for consideration." Resp. to Mot. to Dismiss at 21, ECF No. 24.

Mr. Adi cites *Iddir v. Immigr. & Naturalization Serv.* for the proposition that administrative exhaustion may be excused if, among other exceptions, "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue . . . ." 301 F.3d 492, 498 (7th Cir. 2002) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992)). However, *Iddir* discussed this futility exception in the context of the federal common law doctrine of exhaustion. *See* 301 F.3d at 496-99 (evaluating whether exhaustion should be required after deciding jurisdiction was not precluded under 8 U.S.C. § 1252(a)(2)). This common law doctrine does not apply where "the inflexible command of a statute" requires "exhaustion as a prerequisite to judicial review." *Glisson v. U.S. Forest Serv.*, 55 F.3d 1325, 1327-28 (7th Cir. 1995).

Here, section 1421(c) is clear. It states that "[a] person whose application for naturalization . . . is denied" may only "seek review of such denial" "after a hearing before an immigration officer under section 1447(a)." 8 U.S.C. § 1421(c). In other words, section 1421(c) sets forth two statutory prerequisites to judicial review. First, a section 1447(a) hearing must have been conducted (a reviewing officer's final determination consummates this hearing, *see* 8 C.F.R. § 336.9). And second, the status of the application for naturalization must be "denied" when the petitioner seeks judicial review. *See Klene,* 697 F.3d at 669 ("If the application for naturalization had been pending when the removal proceedings began, then . . . § 1421(c) would not have allowed [the applicant] to ask the district court for relief."). Therefore, regardless of whether USCIS has ultimately predetermined Mr. Adi's naturalization denial, judicial review of that denial is precluded by section 1421(c) unless its status "is denied" when Mr. Adi sought

judicial review. The jurisdictional inquiry, then, turns on whether Mr. Adi's final determination asserting that denial is still effective despite its putative withdrawal by USCIS. The Court can only answer that question, however, if there is a jurisdictional basis to review USCIS's withdrawal action.

The Government contends that there is not. Pointing to the statutory text, the Government asserts that judicial review under section 1421(c) is limited to "review of such denial." 8 U.S.C. § 1421(c). The implication of this text, according to the Government, is that a denial, and only a denial, may be the subject of judicial review—a narrow construction which would ostensibly bar review of the propriety of USCIS's withdrawal of its final determination. *See also Yith v. Nielsen*, 881 F.3d 1155, 1162-63 (9th Cir. 2018) (contrasting section 1421(c)'s limited review of "such denial" with section 1447(b)'s broader review over the entire "matter"). By the Government's reckoning, this Court cannot review the predicate question of whether USCIS's withdrawal of its final determination deprives the Court of jurisdiction to review the merits of that determination.

The Government, however, neglects to consider that a "District Court has jurisdiction to determine its jurisdiction . . . ." *Land v. Dollar*, 330 U.S. 731, 739 (1947); *see also Resolution Trust Corp. v. Lightfoot,* 938 F.2d 65, 67 (7th Cir. 1991). And "[w]hen judicial review depends on a particular fact or legal conclusion, . . . a court may determine whether that condition exists." *Yang v. Immigr. & Naturalization Serv.*, 109 F.3d 1185, 1192 (7th Cir. 1997), *abrogated on other grounds by Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 314 (2001); *see also, e.g.*, *Vaca-Tellez v. Mukasey*, 540 F.3d 665, 668-69 (7th Cir. 2008) (affirming court's jurisdiction to determine whether noncitizen had been convicted of an aggravated felony notwithstanding statute that strips court of appeals of jurisdiction to review any final removal

order against an alien removable by reason of having committed an aggravated felony). Thus, because a final determination denying a naturalization application is a jurisdictional prerequisite, section 1421(c) does not preclude a threshold examination of the effect of USCIS's putative withdrawal of that determination.

To that extent, Mr. Adi wins the battle but still loses the jurisdictional war. As the party asserting jurisdiction, he is burdened with establishing it. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Here, jurisdiction turns on whether USCIS can withdraw its final determination, but Mr. Adi identifies no basis—no statute, regulation, or case law—restricting USCIS's authority to withdraw a prior decision, much less restricting its authority to withdraw a final determination as to a naturalization application under section 1447(a). Indeed, in arguing that the jurisdictional predicate of a denial can be excused on grounds of futility, Mr. Adi essentially concedes that the effect of the withdrawal is to vacate the final determination denying his naturalization application. He doesn't argue that the final determination remains effective because the withdrawal is a nullity; he argues that the withdrawal foreordains the outcome when—at some unknown time in the future—USCIS reissues a final determination.

Mr. Adi does, to be sure, challenge the rationale underpinning USCIS's withdrawal decision. He maintains that the priority provision did not preclude USCIS from issuing a final determination because his removal proceeding was not properly initiated. But challenging the reasoning that prompted USCIS to act and challenging its authority to act are two different matters. This Court's jurisdiction over Mr. Adi's claim does not hinge on whether USCIS correctly concluded that section 1429 precluded it from issuing a final determination (again, as the Seventh Circuit explained in *Klene,* this Court's jurisdiction is unaffected by section 1429). It

11

hinges, rather, on whether USCIS had the authority to withdraw a final determination under section 1447(a) (an authority wholly distinct from the authority divested by section 1429). Mr. Adi simply doesn't address the latter question. He asserts that USCIS's withdrawal was "ultra vires,"—that is, "beyond the scope of power allowed or granted . . . by law"; "unauthorized", *Black's Law Dictionary* (11th ed. 2019)—but he identifies no authority restricting USCIS from withdrawing a final determination, particularly one it concluded had been issued in contravention of the priority provision. Mr. Adi believes that USCIS was wrong and that the priority provision did not apply because removal proceedings had not actually commenced, but assuming arguendo that he is correct,[5] he fails to explain why an erroneous application of the priority provision rendered it beyond the scope of USCIS's authority to withdraw its final determination. The few cases this Court has found which have addressed USCIS's authority to withdraw a naturalization denial have not deemed it necessary to evaluate the withdrawal's justification. *See, e.g.*, *Gizzo v. Immigr. & Naturalization Serv.*, 510 F. Supp. 2d 210, 211-13 (S.D.N.Y. 2007) ("It is . . . well established that [USCIS] had the authority and jurisdiction to vacate its own denial of petitioner's naturalization application."); *Kotama v. Martin*, 2019 WL 6620507, at *3 (C.D. Cal. July 3, 2019) ("Plaintiff has failed to show that he properly invoked the Court's jurisdiction under Section 1421(c) before USCIS withdrew the denial of his application.").

USCIS plainly has the authority to assess whether it is permitted to consider a naturalization application under section 1429, and a decision that it cannot consider an application is not reviewable in this Court. Section 1421(c) does not provide for district court review of agency inaction on a naturalization application, and generally, agency decisions not to

---

[5] Given the conclusion that the Court lacks subject-matter jurisdiction, this opinion takes no position on Mr. Adi's arguments about whether the notice to appear provided to him was sufficient to initiate a removal proceeding.

act are presumptively unreviewable except where statutes provide guidelines for the agency to follow in exercising its powers. *See Heckler v. Chaney*, 470 U.S. 821, 833 (1985). Here, Mr. Adi has failed to identify any such guidelines, and this Court cannot impose its own. It bears noting, moreover, that Congress knew how to provide jurisdiction to review USCIS inaction on a naturalization petition if it wanted to do so. Section 1447(b) provides judicial review of a failure by USCIS to issue a decision on a naturalization application within 120 days of the submission of the application, but there is no similar statute that vests district courts with jurisdiction to review the timeliness of a section 1447(a) final determination.

Mr. Adi's predicament, then, is no different than it would be had USCIS decided—based, say, on a flawed reading of the priority provision—to forego issuing a final determination altogether. In that scenario, section 1421(c) jurisdiction would inarguably be foreclosed for want of a naturalization denial to review and Mr. Adi cites no authority to suggest that an applicant could compel agency action pursuant to section 1447(a) by invoking section 1421(c) to scrutinize its demur. The only difference between this hypothetical and Mr. Adi's situation is that in the former, USCIS refrains from issuing a final determination because it thinks it lacks authority to do so, and in the latter, it withdraws a final determination having concluded that it lacked authority to issue it. In both scenarios, Mr. Adi's ability to obtain a final determination of his naturalization application turns on USCIS's determination as to whether removal proceedings are pending. Mr. Adi provides no reason to conclude that USCIS's unreviewable rationale for foregoing action is somehow made reviewable when expressed as justification for vacating it.[6]

---

[6] Mr. Adi does not argue that the ***timing*** of USCIS's withdrawal decision prejudiced him. Nor could he, given that USCIS withdrew the final determination before he sought judicial review of that determination in this Court. This case does not present what might be a closer question, namely whether USCIS could withdraw its final determination ***after*** a section 1421(c) petition properly vests a district court with subject-matter jurisdiction.

Accordingly, the Court concludes that it lacks subject-matter jurisdiction under section 1421(c) to review USCIS's denial of Mr. Adi's naturalization application. By virtue of USCIS's withdrawal of its July 2019 final determination, which Mr. Adi has not shown to be beyond USCIS's authority, there is, at this time, no denial to review. Therefore, the Government's motion to dismiss Mr. Adi's section 1421(c) claim for lack of subject-matter jurisdiction is granted.

## C.     28 U.S.C. § 1331 Jurisdiction

Alongside his section 1421(c) claim, Mr. Adi claims that USCIS deprived him of his right to due process by withdrawing his final determination. Specifically, he asserts that USCIS deprived him of a procedural due process right by violating its own internal guidance and it deprived him of a substantive due process right to "family unification" by denying him an opportunity to naturalize. Compl. ¶¶ 107, 111, 116, ECF No. 1. He also asserts an implied cause of action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As all of these claims derive from the Due Process Clause of the Fifth Amendment, Mr. Adi argues that 28 U.S.C. § 1331 provides subject-matter jurisdiction in this case. Congress's limited grant of jurisdiction to district courts in section 1421(c), however, precludes federal question jurisdiction here.

Generally, federal question jurisdiction under 28 U.S.C. § 1331 exists to review agency actions. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). In these instances, the Administrative Procedure Act (APA) defines the claim. 5 U.S.C. §§ 701-06; *see also Califano*, 430 U.S. at 107 (holding that the APA is not an independent source of subject-matter jurisdiction). But the APA also forecloses federal question jurisdiction to the extent that other "statutes preclude judicial

14

review." 5 U.S.C. § 701(a)(1). To determine when this exception takes effect, courts look to *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994).

In *Thunder Basin*, the Supreme Court set out a two-step framework for determining when a statutory scheme of administrative and judicial review forecloses parallel district-court jurisdiction under section 1331. Courts are first instructed to ask whether such intent is "fairly discernible in the statutory scheme." *Id.* at 207. If so, courts must then consider whether the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure." *Id.* at 212. A finding that they are forecloses parallel district-court jurisdiction.

The first question has been squarely answered by the D.C. Circuit. In *Miriyeva v. U.S. Citizenship and Immigration Services*, the D.C. Circuit reviewed sections 1421, 1446 and 1447 and found their "intertwined" nature comparable to the Civil Service Reform Act's "elaborate" statutory scheme. 9 F.4th 935, 939-40 (D.C. Cir. 2021); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 10-15 (2012) (holding it was "fairly discernable" that Congress intended the Civil Service Reform Act to foreclose parallel district-court jurisdiction). The D.C. Circuit concluded that "Congress intended these sections to collectively (and exclusively) direct the review process of naturalization application denials . . . ." *Miriyeva*, 9 F.4th at 940. Ultimately, the D.C. Circuit held that Ms. Miriyeva's APA and Due Process claims were precluded by section 1421(c). *Id.* at 945.

As for the second question—whether Mr. Adi's Due Process claims are of the type Congress intended to be reviewed by section 1421(c)—the Supreme Court has provided three factors to consider: (1) whether the claim is "wholly collateral to a statute's review provisions," (2) whether it is "outside the agency's expertise," and (3) whether a finding that jurisdiction is

15

precluded would "foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212-13 (internal quotations and citations omitted). The factors are addressed in turn.

"A claim is not wholly collateral to the claims meant to go through the review scheme if that claim is 'at bottom' an attempt to accomplish what's contemplated by the review scheme." *Miriyeva*, 9 F.4th at 941 (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)). Here, what is contemplated by the review scheme (*i.e.*, judicial review of Mr. Adi's naturalization denial) is at bottom what Mr. Adi is attempting to obtain by raising his Due Process arguments. He is not, to be sure, challenging any portion of the Immigration and Naturalization Act as unconstitutional. He is simply contending that process is due unless he is afforded judicial review pursuant to section 1421(c). If he prevails on any Due Process claim, he will achieve no more than his ultimate section 1421(c) goal: judicial review of his naturalization denial.[7] *Compare Heckler*, 466 U.S. at 614-17 (non-collateral claim success equates to underlying claim success), *with McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494-99 (1991) (wholly collateral claim success does not affect underlying claim). Thus, Mr. Adi's Due Process claims are not wholly collateral to his section 1421(c) claim.

Turning to whether Mr. Adi's Due Process claims are outside USCIS expertise, this Court—without the aid of adversarial presentation on the question—will presume, without finding, that they do. Arguably, Mr. Adi's Due Process claims do not rest on "agency fact-bound inquiries" or "technical considerations of agency policy." *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 (2010) (discussing general principles of "agency expertise"). USCIS does, however, have "extensive experience" in applying the Immigration and

---

[7] Mr. Adi's *Bivens* claim seeks relief beyond that of his section 1421(c) claim—namely, damages. But as this claim is founded upon the same legal theories as all of his other claims, it does not undermine the analysis.

Naturalization Act. *See id.* (same). But even assuming that this factor weighs in Mr. Adi's favor, it does not suffice to counterbalance the other two factors, especially the next one. *See generally Jarkesy v. Sec. Exch. Comm'n*, 803 F.3d 9, 17 (D.C. Cir. 2015) (treating *Thunder Basin* factors as "general guideposts" rather than variables within a "strict mathematical formula").

Finally, as to whether all meaningful judicial review is foreclosed upon a finding here that section 1421(c) precludes the exercise of general federal question jurisdiction to consider Mr. Adi's claims, plainly it is not. Crucially, USCIS's withdrawal of its final determination merely "administratively closed" Mr. Adi's naturalization application—and did so only temporarily. Ex. 3 (N-336 Notice of Decision) of Mot. to Dismiss at 1, ECF No. 18-3. Meaningful judicial review of Mr. Adi's naturalization application has only been stayed pending completion of his removal proceedings. Once those proceedings are complete (a process that may entail appeal to the Board of Immigration Appeals and, ultimately, to the Seventh Circuit), USCIS will recommence adjudication of Mr. Adi's naturalization application and eventually issue a final determination. *See id.* ("Once the immigration court makes a final determination, then adjudication for the administratively closed form may continue as necessary."). Then (assuming Mr. Adi's naturalization application remains denied), Mr. Adi will have a right under section 1421(c) to meaningful judicial review.

Mr. Adi argues that, if he is ordered removed, issue preclusion will make this Court's review a nullity. Not so. Issue preclusion is a defense, conceptually available in any proceeding where its requirements are satisfied. But a good defense does not render the judicial process in which the defense is applied a nullity; a dispositive defense may strip judicial review of suspense but it does not render the review meaningless. If issue preclusion appropriately applies, a ruling

17

affirming that conclusion cannot be said to deprive Mr. Adi of meaningful review in this Court; it would simply mean that Mr. Adi is not entitled to a different outcome.

In anticipating the outcome of his removal proceeding, moreover, Mr. Adi's preclusion argument also puts the cart before the horse. Issue preclusion is a matter to be decided by a court equipped with the record of a prior collateral proceeding, not by conjecture as to what a future collateral proceeding may produce. Even if no new evidence is presented in immigration court and even if Mr. Adi's immigration judge views the former evidence in a light similar to his reviewing officer (two scenarios far from certain), that evidence will be applied to a burden of proof much more favorable to Mr. Adi in his removal proceeding. To his USCIS reviewing officer, Mr. Adi was required to prove by a "preponderance of the evidence" that he was eligible for naturalization. 8 C.F.R. § 316.2(b). Conversely, to Mr. Adi's immigration judge, USCIS must prove by "clear and convincing evidence" that Mr. Adi is deportable as charged. 8 C.F.R. § 1240.8(a). Therefore, issue preclusion cannot be treated as preordained. And so, it is only speculation that jurisdictional preclusion here, coupled with possible issue preclusion based on the course of his removal proceeding, will foreclose all meaningful judicial review.

The *Thunder Basin* factors, viewed as a whole, lead to the conclusion that Mr. Adi's Due Process claims are of the type Congress intended to be reviewed under section 1421(c). Therefore, federal question jurisdiction does not permit this Court to review USCIS's action (or inaction) with respect to Mr. Adi's naturalization application. The Government's motion to dismiss Mr. Adi's Due Process claims for lack of subject-matter jurisdiction is granted.[8]

---

[8] The Seventh Circuit has observed that although district courts do not have "jurisdiction to review the merits of the denial in an ***individual*** case that does not allege a pattern and practice of immigration officials to deny statutorily-guaranteed rights," it does not mean that "an agency's wholesale, carefully orchestrated program to deny statutorily guaranteed rights" is not a "wrong that is independently cognizable in the district court under its federal question

\* \* \*

In short, Congress has provided limited jurisdiction to federal courts under section 1421(c) to review final determinations denying naturalization applications. Here, there is no such denial before the Court, as USCIS withdrew its final determination before Mr. Adi initiated his petition for review in this Court. Section 1421(c) does not permit the exercise of general federal question jurisdiction under section 1331, so the Court also lacks jurisdiction over Mr. Adi's Constitutional claims. Accordingly, the Government's motion to dismiss pursuant to Rule 12(b)(1) is granted; its alternative arguments under Rule 12(b)(6) need not be considered. This case is dismissed for lack of subject-matter jurisdiction. Judgment will be entered for the defendant.

Date: January 28, 2022

John J. Tharp, Jr.
United States District Judge

---

jurisdiction." *Kashani v. Nelson*, 793 F.2d 818, 823 (7th Cir. 1986) (reviewing holdings from *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023 (5th Cir. 1982) and *Jean v. Nelson*, 727 F.2d 957 (11th Cir. 1984)) (emphasis in original; internal quotations removed). Here, such "pattern and practice" has not been alleged. On the contrary, Mr. Adi alleges that USCIS—as an institution—mandated the opposite of what occurred in his case. *See* Compl. ¶¶ 32-38, ECF No. 1; Resp. to Mot. to Dismiss at 26, ECF No. 24 ("Plaintiff brings suit against a low-level immigration officer's actions ***disregarding mandatory agency policy*** . . . .") (emphasis added).